**FOLLMAN PROPERTIES
COMPANY, Appellee,**

**v.**

**Thomas Francis DALY, Robert L. Nessen and Jack B. Sangunett, individually and in their capacities as trustees of The Franklin Trust (formerly the API Trust), Appellants.**

**No. 85–1771.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1986.

Decided May 9, 1986.

Frank Gulino, New York City, for appellants.

Harry Wilson, St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOODS,* District Judge.

HENRY WOODS, District Judge.

Appellants challenge the district court's [1] holding that appellee broker was entitled to

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

a commission on the sale of a warehouse under the terms of a nonexclusive listing agreement. They also challenge the addition of post-entry language to the judgment finding appellant trustees individually liable for the commission. We affirm.

Appellants as trustees in 1982 acquired the warehouse in question as a trust asset. Star Warehouse, Inc. was then the tenant with two years remaining on its lease. Appellants almost immediately contacted appellee and executed a nonexclusive listing agreement. A six percent commission would be paid to appellee on any sale to a purchaser "procured" at a price "to which Owner shall consent." The agreement contained a sale price of $4,000,000 even though the warehouse was contemporaneously appraised at $3,400,000.

The Star lease contained provisions that ultimately determined the course of this transaction. Appellants could not unreasonably withhold consent to Star's assignment of the lease and Paragraph 23 gave the lessee the option to purchase the warehouse for $2,100,000.

Appellee made substantial efforts to market the property, including the placement of a newspaper ad which elicited a response from Robert Goldwasser, President of Madison Warehouse Corporation. Having bid on the lease in 1969 when the warehouse was newly constructed, Goldwasser had some familiarity with the property. He requested and received from appellee a copy of the lease since he "specifically recalled some type option ... in that lease and wanted to refresh [his] mind as to what that option was." Goldwasser recognized the potential of the clause giving the lessee the right to purchase the warehouse for $2,100,000. Appellants gave it little consideration because they knew Star was in financial difficulties and was with-

out the resources to exercise the option. Apparently, they discounted the possibility of a third party securing an assignment of the lease, which they could not prevent on an unreasonable basis. Goldwasser pursued the rather obvious course of securing an assignment of the lease from Star. After some equivocation, appellants concluded they could not withhold consent to the assignment. As assignee of the lease, Goldwasser on behalf of Madison Warehouse Corporation then exercised the option to purchase the Warehouse for $2,100,000. Appellants refused to pay appellee a broker's commission and this litigation followed.

## II.

■ Although the trial court found that appellee was the "procuring cause" of the sale, it was not necessary that this more stringent requirement be imposed. As the court said in *Nichols v. Pendley*, 331 S.W.2d 673, 675 (Mo.App.1960), "where the terms are not fixed by special contract, the broker is not entitled to his commission unless he is the 'efficient procuring cause' of the sale." Here the terms were fixed by contract. "The question of whether a broker is entitled to a commission depends upon his contract." *Bowman v. Rahmoeller*, 331 Mo. 868, 55 S.W.2d 453, 458 (1932). Under the terms of the contract, appellee was only called upon to carry the somewhat lighter burden of establishing that he "procured" a buyer. The Missouri courts equate the latter term with "find" or "introduce." *Kyle v. Kansas City Life Insurance Co.*, 356 Mo. 331, 201 S.W.2d 912 (1947).[2] In *Kyle* the Missouri Supreme Court drew the distinction between "procure" and "produce." The latter term when used in a contract requires a further step by the broker. "[I]f a sale is not consummated, a broker, in order to earn a commission, must not only 'procure' a pur-

2. *See also E.A. Strout Realty Agency, Inc. v. McKelvy*, 424 S.W.2d 98 (Mo.App.1968). "If a broker is not bound to obtain a binding contract to earn his commission, he may be said to have procured a buyer if he be the means of bringing the parties together or in communication with one another." *Id.* at 102.

chaser, but he must 'produce' him; that is, he must not only *find* one, but he must put him in touch with the seller." 201 S.W.2d at 913–14 (emphasis added).

The district judge did not err in holding that appellee was owed a commission, since the sale was consummated with a party who learned of the property's availability through a newspaper ad placed by appellee.[3] The district judge found that appellant's efforts were the "procuring cause" of the sale.[4] We do not find fault with this conclusion but find it unnecessary to consider this requirement in view of appellee's clear compliance with the contract terms. The contract provision that the owner must consent to the price is no impediment to appellee's recovery. Appellants did consent to the price, albeit their unwilling consent was required by a provision in the lease agreement.

The district judge found that the trustees were individually liable on the contract with appellee. His position is supported by Missouri case law. *See Darling v. Buddy*, 318 Mo. 784, 1 S.W.2d 163, 170 (1927) and *Walker v. Hatfield*, 17 S.W.2d 357 (Mo.App.1929).

Judgment is affirmed.

---

**3.** *See Blackburn-Ens v. Roberts,* 379 S.W.2d 630, 633 (Mo.App.1964) holding that owner-seller "procured" buyer because buyer learned of property's availability from seller before the listing agreement with the broker was signed. "It appears that the word 'procured' here has more the meaning of 'found' and the evidence was sufficient for the jury to conclude that the buyer

was in this sense procured, not during the term of the contract, but prior thereto." *Id.* at 633.

**4.** The court relied on *Staubus v. Reid,* 652 S.W.2d 293, 295 (Mo.App.1983); *E.A. Strout Realty Agency, Inc. v. McKelvy,* 424 S.W.2d 98, 101–02 (Mo.App.1968); *Holman v. Fincher,* 403 S.W.2d 245, 250 (Mo.App.1966).